Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Ave.
South Pasadena, CA 91030

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
Innovative Sports Management, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOANNE PAMELA ZALDIVAR, individually and d/b/a COPAN SULA RESTAURANT, <br><br> Defendant. | Case No.: 2:13-cv-02535-TJH-PLA <br><br> PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED APPLICATION FOR DEFAULT JUDGMENT BY THE COURT |

TO THE HONORABLE COURT, THE DEFENDANT AND TO HER ATTORNEYS OF RECORD:

Plaintiff, Innovative Sports Management, Inc., by and through its attorneys of record, submits this Memorandum in Support of its Renewed Application for Default Judgment against Defendant Joanne Pamela Zaldivar, individually and d/b/a Copan Sula Restaurant (hereinafter "Defendant"). For the reasons set forth herein, as well as the reasons set forth in Plaintiff's Renewed Application for

Default Judgment and supporting evidence, Plaintiff respectfully requests that its

Renewed Application for Entry of Default Judgment be granted.


Dated:  May 5, 2014          /s/ *Thomas P. Riley*

**LAW OFFICES OF THOMAS P. RILEY, P.C.**
By:  Thomas P. Riley
Attorneys for Plaintiff
Innovative Sports Management, Inc.

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ............................................................................................3

PROCEDURAL HISTORY ................................................................................ 4

ARGUMENT........................................................................................................ 4

I.   PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT AS THE NINTH CIRCUIT FACTORS OUTLINED IN *EITEL v. McCOOL* ARE SATISFIED...................................................................................4

    A.   Plaintiff May Bring The Claims Raised Herein.................................13

II.  PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES AS PERMITTED UNDER THE UNITED STATES CODE..........................................................................................14

    A.   Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy..................................................................................................15

        1.   The Statutes Contemplate Both Specific and General Deterrence..............................................................................17

    B.   Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II) And Enhanced Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(ii)..........................................................................18

    C.   Substantial Penalties Are Necessary To Combat Piracy. .......................................................................................22

III. PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION......23

IV.  PLAINTIFF IS ENTITLED TO COSTS AND REASONABLE   ATTORNEYS FEES................................................23

CONCLUSION..................................................................24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITES

**PAGE(S)**

## CASES

*Adobe Systems Inc. v. Kern*,
2009 WL 5218005 (N.D.Cal. Nov. 24, 2009) ....................................................... 6

*Danning v. Lavine*,
572 F.2d 1386 (9th Cir. 1978) .................................................................14

*Direct Mail Specialists v. Eclat Computerized Technologies*,
840 F.2d 685 (9th Cir. 1988) ...................................................................11

*Directv, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) ...............................................................6, 8

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ............................................................ 4-12

*Ellard v. Conway*,
94 Cal.App.4th 540 (Cal.App. 2001) ....................................................11

*Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*,
219 F.Supp.2d 769 (S.D. Tex. 2002)......................................................19

*Fair Housing of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ...................................................... 5-6, 14

*Fogal v. Stature Const., Inc.*,
294 S.W.3d 708 (Tex.App. 2009) ...........................................................14

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
344 U.S. 228 (1952)................................................................................15

*J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*,
789 F.Supp.2d 669 (D.S.C. 2011) ..........................................................17

*J & J Sports Productions, Inc. v. Castrillon*,
2009 WL 1033364 (E.D.N.Y. April 16, 2009)......................................22

*J & J Sports Productions, Inc. v. Cubides*,
2008 WL 2756401 (S.D. Tex. July 15, 2008) ........................................18

*J & J Sports Productions, Inc. v. Grajales*,
2010 WL 2640091 (N.D.Ga. June 28, 2010) .........................................16

*J & J Sports Productions, Inc. v. Hernandez*,
2011 WL 3319558 (E.D.Cal. Aug. 1, 2011) ....................................... 5-6

*J & J Sports Productions, Inc. v. Hernandez*,
2010 WL 1980186 (E.D.Cal. May 17, 2010)...........................................7

*J & J Sports Productions, Inc. v. Herrera*,
2011 WL 643413 (E.D.Cal. Feb. 17, 2011) ...................................................17

*J & J Sports Productions, Inc. v. Marcaida*,
2011 WL 2149923 (N.D.Cal. May 31, 2011)..............................8, 16, 20

*J & J Sports Productions Inc. v. Olivares*,
2011 WL 587466 (E.D.Cal. Feb 9, 2011) .......................................................8

*J & J Sports Productions, Inc. v. Paniagua*,
2011 WL 996257 (N.D.Cal. March 21, 2011) ...........................................6

*J & J Sports Productions, Inc. v. Paolilli*,
2011 WL 6211905 (E.D.Cal. Dec. 14, 2011) ............................................22

*J & J Sports Productions, Inc. v. Parayno*,
2013 WL 942528 (N.D.Cal. March 11, 2013) ...........................................9

*J & J Sports Productions, Inc. v. Ramos*,
2012 WL 4575338 (S.D.Cal. Oct. 2, 2012) ...............................................6

*J & J Sports Productions, Inc. v. Sanchez*,
2011 WL 5041022 (S.D.Cal. Oct. 24, 2011) .......................................6, 10

*J & J Sports Productions, Inc. v. Tilakamonkul*,
2011 WL 2414550 (E.D.Cal. June 10, 2011) ....................................20-21

*J & J Sports Productions, Inc. v. Torres*,
2011 WL 6749817 (E.D.Cal. Dec. 22, 2011) .................................6, 8, 10

*J & J Sports Productions, Inc. v. Wood*,
2012 WL 33258 (N.D.Cal. Jan. 6, 2012) ...................................................22

*Joe Hand Promotions, Inc. v. Bernal*,
2013 WL 1402464 (E.D.Cal. April 5, 2013) ...........................................12

*Joe Hand Promotions, Inc. v. Gamino*,
2011 WL 66144 (E.D.Cal. Jan. 10, 2011) ...............................................17

*Joe Hand Promotions, Inc. v. Lynch,*
822 F.Supp.2d 803 (N.D.Ill. 2011) ..........................................................10

*Joe Hand Promotions, Inc. v. Maryland Food & Entertainment, LLC*,
2012 WL 5879127 (D.Md. Nov. 19, 2012) ..............................................10

*Joe Hand Promotions, Inc. v. Sheedy,*
2011 WL 4089534 (D.S.C. July 29, 2011) ...............................................19

*Joe Hand Promotions, Inc. v. Sorondo*,
2011 WL 4048786 (E.D.Cal. Sept. 9, 2011) ...........................................21

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
168 F.3d 347 (9th Cir. 1999) ....................................................................9

*Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,*
152 F.Supp. 438 (S.D.N.Y. 2001) ................................................................18

*Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*
2013 WL 394400 (E.D.Va. Jan. 30, 2013) .................................................21

*Lauretex Textile Corp. v. Allton Knitting Mills, Inc.,*
519 F.Supp. 730 (S.D.N.Y. 1981) ..............................................................14

*PepsiCo, Inc. v. California Security Cans,*
238 F.Supp.2d 1172 (C.D.Cal. 2002)....................................................5, 12

*Philip Morris USA v. Castworld Prods., Inc.,*
219 F.R.D. 494 (C.D.Cal. 2003)....................................................................4

*Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.,*
509 F.3d 1161 (9th Cir. 2007) ....................................................................11

*Time–Warner Cable of New York City v. Googies Luncheonette, Inc.,*
77 F.Supp.2d 485 (S.D.N.Y.1999) .............................................................21

*Trackman v. Kenney,*
187 Cal.App.4th 175 (2010) ........................................................................12

*United States ex rel. Dingle v. BioPort Corp.,*
270 F.Supp.2d 968 (D.Mich. 2003) ...........................................................12

*Virgin Records America, Inc. v. Cantos,*
 2008 WL 2326306 (S.D.Cal. June 3, 2008) ..............................................12

## STATUTES AND RULES

United States Code

47 U.S.C. § 605................................................................................passim

47 U.S.C. § 553................................................................................passim

Federal Rules of Civil Procedure

4 ....................................................................................................................11

Federal Rules of Evidence

201 ...............................................................................................................12

California Statutes

Cal. Code Civ. § 3336.................................................................................22

Cal. Code Civ. Proc. § 415.20 .............................................................. 11-12

**MISCELLANEOUS**

N.J.S.A. § 14A:2-2.1(6) ........................................................................14

*U.S. Cong. & Admin. News* ..................................................................16

# **INTRODUCTION**

Plaintiff is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the *Honduras v. Costa Rica, Word Cup Qualifier Game,* telecast nationwide on Wednesday, April 11, 2012 via closed-circuit television (hereinafter referred to as the "*Program*"). *Complaint* ¶ 14 (Dkt. No. 1); *Jacobs Decl.* ¶ 3.[1] This *Program* included all interviews and game commentary encompassed in the television broadcast of the even. *Id.; Jacobs Decl.* ¶ 3. Pursuant to the contract granting Plaintiff its distribution rights, Plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the Program. *Complaint* ¶ 15; *Jacobs Decl.* ¶ 3.

Without the authorization of Plaintiff, Defendant unlawfully intercepted and exhibited the Program at his commercial establishment, Copan Sula, operating at 6030 Santa Fe Avenue, Huntington Park, CA 90255. *Complaint* ¶ 17; *Declaration of Affiant* (submitted herewith).

---

[1] There is a typographical error in the first sentence of the investigator's affidavit indicating a date of April *11, 2011* instead of April 11, 2012. *See Declaration of Affiant.* However, as the Court will note, the handwritten date on page two of the affidavit is April 14, *2012. Id.* In addition, the notary indicates it was signed on April 14, *2012. Id.* Moreover, as independent news information corroborates, the Costa Rica / Honduras match was played on April 11, 2012. *E.g.* http://us.soccerway.com/matches/2012/04/12/world/friendlies/costa-rica/honduras/1247575/. Plaintiff apologizes for the error and, given that the match was actually played on April 11, 2012, requests that the Court consider Plaintiff's Complaint to be timely.

# **PROCEDURAL HISTORY**

Plaintiff filed its Complaint on April 10, 2013. (Dkt. No. 1). Defendant was served on April 27, 2013. (Dkt. No. 5). The validity of service is addressed in Argument Section I, *infra*. Default was entered against Defendant on June 25, 2013. (Dkt. No. 7). Subsequent to the denial of an original application for default judgment (Dkt. No. 9), this Court entered an Order directing Plaintiff to take further action, which included the filing of a renewed motion for default judgment. *See* (Dkt. No. 10). Plaintiff now seeks default judgment against Defendant.

# **ARGUMENT**

I.      PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT IN THIS MATTER AS THE NINTH CIRCUIT FACTORS OUTLINED IN *EITEL v. McCOOL* ARE SATISFIED.[2]

The factors to be considered in ruling on an application for default judgment are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498

---

[2] This portion of the *Eitel* analysis presumes that Plaintiff has standing to bring its claims. Plaintiff addresses that issue specifically in Section I.A., *infra.*

(C.D.Cal. 2003). Upon entry of default, all well-pleaded facts in the complaint are taken as true, save those related to the amount of damages. *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002).

With respect to prejudice, Plaintiff will be prejudiced if default is not entered because it has sustained injury as a result of the actions of Defendant and without default judgment, Plaintiff will be left without a judicial resolution to its claims and without other recourse for recovery. *See PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002).

The second and third *Eitel* factors "require that a plaintiff state a claim on which the plaintiff may recover." *PepsiCo, Inc.*, 238 F.Supp.2d at 1175. To prevail under 47 U.S.C. § 605 or 47 U.S.C. § 553, Plaintiff must demonstrate that it has a proprietary interest in the *Program* and that Defendant unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the *Program* at Copan Sula without the authorization of Plaintiff. *See* 47 U.S.C. § 605(a); 47 U.S.C. § 553(a). To prevail on the conversion claim, Plaintiff must demonstrate "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.,* 958 F.2d 896, 906 (9th Cir. 1992). In this case, Plaintiff's Complaint properly alleges the elements of the above causes of action and, therefore, the first two factors of the *Eitel* analysis are satisfied. *See Complaint ¶¶* 13-22, 23-27, 28-31; *see J & J Sports Productions, Inc. v. Hernandez,* 2011 WL 3319558, *4 (E.D.Cal. Aug. 1, 2011). Similarly, as all

well-pled allegations of fact are taken as true, Plaintiff has also satisfies the fifth

*Eitel* factor. *See Adobe Systems Inc. v. Kern,* 2009 WL 5218005, *6 (N.D.Cal.

Nov. 24, 2009), *citing Fair Housing of Marin*, 285 F.3d at 906. In *J & J Sports

Productions, Inc. v. Sanchez*, 2011 WL 5041022 (S.D.Cal. Oct. 24, 2011), the

district court held that, "because Plaintiff has sufficiently plead the claims asserted

and offered a sworn affidavit from the investigator who observed and documented

Defendants' violation, dispute as to material facts is unlikely." *Id.* at *2. Plaintiff

submits the same evidence herein. California district courts have routinely found

similar allegations sufficient to state a claim and have routinely granted default

judgment based on similar allegations. *E.g. J & J Sports Productions, Inc. v.

Ramos*, 2012 WL 4575338, *2 (S.D.Cal. Oct. 2, 2012); *J & J  Sports Productions,

Inc. v. Paniagua,* 2011 WL 996257 (N.D.Cal. March 21, 2011)*; Hernandez,* 2011

WL 3319558 at *5.

　　　While entry of default necessitates a finding of liability under both sections

605 and 553, Plaintiff only seeks liability and damages on its claim under 47

U.S.C. § 605 (as well as its claim for conversion). There is a split of authority as to

whether an interception may violate both 47 U.S.C. § 605 and 47 U.S.C. § 553.

*See J & J Sports Productions, Inc. v. Torres,* 2011 WL 6749817, *4 (E.D.Cal. Dec.

22, 2011). However, it is accepted that a satellite interception violates section 605

and that a cable interception violates section 553. *Id.* at*4, *citing Directv, Inc. v.

Webb,* 545 F.3d 837, 844 (9th Cir. 2008).

In its original Order denying Plaintiff's first motion for default judgment, this Court also noted that 47 U.S.C. § 553 addresses communications that travel over a cable system, and 47 U.S.C. § 605 addresses communications via radio (which includes satellite transmissions). *Order* at 1-2 (Dkt. No. 14) (citations omitted). The Court also held, however, that "Innovative has not alleged that Defendant intercepted communication over a cable system or that Defendant intercepted radio or satellite communication." *Order* at 2. While Plaintiff acknowledges that the words "cable" and "satellite" are not utilized in the 605 and 553 counts, that does not mean that Plaintiff is not entitled to default judgment.

In *J & J Sports Productions, Inc. v. Hernandez*, 2010 WL 1980186 (E.D.Cal. May 17, 2010), the Court was faced with the substantially similar issue and nonetheless granted default judgment:

> Here, plaintiff has not alleged whether the transmission that defendant intercepted was from a cable system or a satellite television signal. As plaintiff's brief correctly suggests, a split of authority has developed regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system. . . .
>
> At a minimum, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Plaintiff essentially concedes that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast),

it "should not be prejudiced" given defendant's failure to appear or defend itself in this action. (Pl.'s Memo. of P. & A. in Supp. of Application for Default J. at 3, Dkt. No. 12, Doc. No. 12–2.) The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice.

*Id.* at *4.

Similarly, in this case, due to Defendant's failure to appear and/or participate, Plaintiff cannot isolate the precise method of interception and requests that the Court award damages under 47 U.S.C. § 605. *Torres,* 2011 WL 6749817 at *5. In *J & J Sports Productions, Inc. v. Marcaida,* 2011 WL 2149923, *2 (N.D.Cal. May 31, 2011), also a default judgment case, the district court held:

Plaintiff cannot determine the precise means Defendant used to receive the program unlawfully. . . Based on the declaration of Plaintiff's investigator and Plaintiff's failure to respond to this litigation, the Court finds it appropriate to award damages under 47 U.S.C. § 605. . . . *Plaintiff has adequately pleaded facts in support of each of his claims.* Taking these facts as true as the Court must, Plaintiff's claims have merit.

*Id.* at *2 (emphasis added); *see also J & J Sports Productions Inc. v. Olivares,* 2011 WL 587466, *2 (E.D.Cal. Feb 9, 2011) ("Having accepted the well pleaded allegations of the complaint as true, Plaintiff is entitled to judgment based on Defendants' violation of 47 U.S.C. § 605."). Such a finding is also in keeping with the Ninth Circuit's observation that obtaining direct evidence of signal interception is difficult. *See Webb*, 545 F.3d at 844 ("The law does not require

direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandably be hard to come by.").[3]

Other district courts have held that when the pleadings do not specify whether the broadcast was intercepted by satellite or cable the court should default to finding liability and awarding damages under section 553. *E.g. J & J Sports Productions, Inc. v. Parayno*, 2013 WL 942528, *2 (N.D.Cal. March 11, 2013) ("Plaintiff does not specifically allege or submit evidence of the manner in which Defendant intercepted the Program, by either satellite dish or by cable box, but it is unlikely to have been both. . . . Courts in this district have held that when the method of interception is not alleged, damages are more appropriately analyzed under § 553 because a cable box is more easily hidden."); *G & G Closed Circuit Events, LLC v. Thao Xuan Vo*, 2012 WL 899955, *2 (N.D.Cal. March 15, 2012). Nonetheless, the common thread in all of the cases, whether judgment was ultimately found under section 605 or 553, is that default judgment *was* entered and damages were awarded. If this Court is inclined to agree with those Courts that apply section 553, the analysis herein is essentially the same. However, the

---

[3] In *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349, n.1 (9th Cir. 1999), the Ninth Circuit upheld a finding of liability for piracy although there was no discussion as to the specific statute to be applied. That issue, however, was not addressed by the parties. *Id.*

minimum and maximum awards are lower under section 553. See 47 U.S.C. § 605(e)(3)(C); 47 U.S.C. § 553(c)(3).[4]

As to the amount of money at stake, the amount requested by Plaintiff for its federal claim is reasonable in that it is within the range authorized by Congress pursuant to statute. *See e.g.* 47 U.S.C. §§ 605(e)(C)(3)(i)(II) and (e)(3)(ii). The amount Plaintiff seeks for its conversion count is simply the value of the property at the time of its conversion. Because Plaintiff is an aggrieved party under section 605, Plaintiff is entitled to the damages permissible by statute, and thus this factor weighs in favor of default judgment. *See Sanchez*, 2011 WL 5041022 at *2 (holding that "the sum of money at stake is not substantial" when Plaintiff sought maximum damages). In addition, because this Court has discretion to award less than the statutory maximum, even if this factor weighed against default judgment, it does not outweigh the other factors. *Torres*, 2011 WL 6749817 at *5.

Next, there is no evidence that the failure of Defendant to respond was due to excusable neglect. As indicated by the sworn proof of service on file herein,

---

[4] It has also been consistently been held that a complaint alleging violations of 47 U.S.C. §§ 605 and 553, but without identifying whether the interception was by cable or satellite is valid. *E.g. Joe Hand Promotions, Inc. v. Maryland Food & Entertainment, LLC*, 2012 WL 5879127, *4 (D.Md. Nov. 19, 2012) ("Joe Hand's complaint does in fact sufficiently state causes of action against Maryland Food under sections 553 and 605 of the Cable Act. . . . The complaint need not specify the precise method of interception . . . [.]"; *Joe Hand Promotions, Inc. v. Lynch,* 822 F.Supp.2d 803, 805-06 (N.D.Ill. 2011) (denying motion to dismiss for failure to state a claim and holding, "[t]he mutual exclusiveness of § 605 and § 553 is well-established law. In light of that legal principle, any complaint asserting that a single action violates both statutes can only be interpreted as stating alternative claims.").

Defendant was properly served via substitute service. *Proof of Service*. A sworn proof of service constitutes "prima facie evidence of valid service which can be overcome only by *strong and convincing evidence.*" *Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (emphasis added). Federal Rule of Civil Procedure 4(e)(1) allows for the "borrowing" of a state service of process provision. California allows for substitute service at a usual place of business on "a person apparently in charge." C.C.P. § 415.20(b). Federal Rule of Civil Procedure 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists v. Eclat Computerized Technologies*, 840 F.2d 685, 688 (9th Cir. 1988). This flexibility standard also applies to substitute service under California Code of Civil Procedure § 415.20. *See Ellard v. Conway*, 94 Cal.App.4th 540, 544 (Cal.App. 2001).

Defendant was served at her usual place of business through a person in Charge (Sophia Grandes). *Proof of Service.* "The term 'usual place of business' includes a defendant's customary place of employment as well as his own business enterprise." C.C.P. § 415.20 (Judicial Council Comment). Defendant is the owner and operator of Copan Sula and is specifically identified on the liquor license for Copan Sula (and was at the time of the *Program*). *See Complaint* ¶¶ 7, 8;

http://www.abc.ca.gov/datport/LQSdata.asp?ID=52801577[5], and thus Copan Sula is Defendant's business enterprise.

As noted in the Declaration of Diligence, Plaintiff attempted to serve Defendant on three prior occasions. *Proof of Service* at 3. This is sufficient for purposes of substitute service. *See Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal.App.4th 1387, 1391-92 (1992) (two or three unsuccessful attempts at personal service satisfies reasonable diligence and allows substitute service to be made). After being unsuccessful, Plaintiff effectuated service by leaving it with a person in charge at Defendant's business address as required by C.C.P. § 415.20. Service was made on "Sophia Grandes - Person in Charge." *Proof of Service* at 1. Ms. Grandes was informed of the nature of documents and instructed to deliver the documents to Defendant. *Id.* at 1, 3. California has consistently upheld such service. *Trackman v. Kenney*, 187 Cal.App.4th 175, 182-83 (2010); *Joe Hand Promotions, Inc. v. Bernal*, 2013 WL 1402464, *2 (E.D.Cal. April 5, 2013) (upholding similar "Doe" service). Finally, Plaintiff then mailed the documents to Defendant as required by Rule 415.20(b). *Proof of Service* at 3. The failure of

---

[5] This Court may take judicial notice of this information as it was obtained from an official government website and it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed.R.Evid. 201(b)(2); *see United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (D.Mich. 2003) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . . This includes public records and government documents available from reliable sources on the Internet.").

Defendant to respond despite being properly served establishes that his default was not due to excusable neglect. *Virgin Records America, Inc. v. Cantos,* 2008 WL 2326306, *3 (S.D.Cal. June 3, 2008).

The only *Eitel* factor that weighs in favor of the Defendant is the last, the policy favoring decisions on the merits. Of course, this factor arguably always weighs against the entry of default judgment. Moreover, "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Finally, this factor, standing alone, is not enough to preclude default judgment. *Id.* When all of the *Eitel* factors are considered, it is clear that default judgment is appropriate in this case.

A.   Plaintiff May Bring The Claims Herein.

This Court has a duty to ascertain whether Plaintiff has standing to bring its claims. In previous cases, this Court expressed concerns regarding the underyling licensing agreement at issue; Plaintiff addresses the licensing agreement below. Based on the following, Plaintiff submits that it is the proper party herein.

The name by which Innovative Sports Management, Inc. is identified in the opening paragraph of the August 2011 agreement is "Integrated Sports Media, Inc." *See Jacobs Decl.* ¶ 5; (Exhibit 1). There is also an inadvertent reference to an "LLC" in the agreement. *Id.* The name appearing above Mr. Jacobs' signature in the August 2011 agreement is "Integrated Sports Media." *Id.* The inclusion of "Inc." in the introductory paragraph and later "LLC" in paragraph 10, was

inadvertent and the result of drafting errors.  *Id.*. Innovative Sports Management, Inc. is organized and exists under the laws of New Jersey. Innovative Sports Management, Inc. is registered to do business as "Integrated Sports Media and Marketing." *Id.* ¶ 6. Within the industry, "Integrated Sports" and "Integrated Sports Media" are shorthands for the d/b/a designation. *Id.*[6]

Ultimately, as Mr. Jacobs testifies, "while the August 2011 contract does not correctly identify that the contracts are with Innovative Sports Management, Inc., it was always the intention of the parties that Innovative Sports Management, Inc. was entering into the contracts, and that the rights granted were granted solely to Innovative Sports Management, Inc." *Jacobs Decl.* at ¶ 7.

## II.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED STATUTORY DAMAGES AS PERMITTED UNDER THE UNITED STATES CODE.

Defendant's default serves as an admission of Plaintiff's well-pled allegations of fact with respect to liability. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 978). Default, however, does not establish damages. *Fair Housing of Marin,* 285 F.3d at 906. Plaintiff addresses damages below.

A party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Plaintiff elects to recover

---

[6] While these shorthands are not identified on the Assumed Name registration, this does not prohibit the ability to contract. N.J.S.A. § 14A:2-2.1(6); *see Fogal v. Stature Const., Inc.*, 294 S.W.3d 708, 717 (Tex.App. 2009) (interpreting similar assumed name provision and finding arbitration agreement valid notwithstanding improper assumed name designation).

statutory damages. Statutory damages are appropriate where actual damages are difficult to prove. *Lauretex Textile Corp. v. Allton Knitting Mills, Inc*., 519 F.Supp.730, 732 (S.D.N.Y. 1981). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The amount of statutory damages permitted by this section shall be not less than $1,000.00 nor more than $10,000.00.  *Id.* In addition, Plaintiff respectfully requests "enhanced" statutory damages pursuant to section 605(e)(3)(C)(ii) (permitting this Court, in its discretion, to award up to $100,000 in additional damages where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . .").  Plaintiff will refer to damages for willful behavior as "enhanced" statutory damages. Within the parameters of the statutory limits, Plaintiff respectfully requests that this Court utilize its discretion to make an award that both sufficiently compensates Plaintiff and functions as an effective deterrent.

A.   <u>Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy.</u>

When Congress enacted the Communications Act, it was keenly aware of the detrimental impact of piracy. In fact, Congress has equated a violation of the piracy statutes to theft. *Cable Communications Policy Act of 1984, House Report*

*No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720 (emphasis added). As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-*the theft cable service . . .*
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720 (emphasis added). The concerns raised by Congress when passing the legislation continue to exist. *J & J Sports Productions, Inc. v. Grajales*, 2010 WL 2640091, *3 (N.D.Ga. June 28, 2010) ("Violations like those Violations like those of Defendant are part of a widespread and serious piracy problem currently plaguing the television industry.").

  With the severe impact of piracy in mind, Congress specifically designed 47 U.S.C. § 605 (and its counterpart 47 U.S.C. § 553), to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." *Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7,* 5577, 5658. In assessing damages herein, Plaintiff requests that the Court take the purpose of the legislation into account and recognize that an "award of modest damages does not satisfy the purpose of the legislation." *J & J Sports Productions,*

*Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 677 (D.S.C. 2011). As noted in *J & J Sports Productions, Inc. v. Herrera*, 2011 WL 643413, *4 (E.D.Cal. Feb. 17, 2011), the Court must be "mindful that minimal damages awards may result in a perceived lack of consequence for signal piracy."

                1.      The Statutes Contemplate both Specific and General Deterrence.

A primary goal of piracy awards is deterrence. *Marcaida,* 2011 WL 2149923 at *4 ("[T]he Court notes that signal piracy is a pervasive and increasing problem and that a primary purpose of § 605 is to deter such conduct. . . ."). The piracy statutes contemplate both specific and general deterrence. *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, *4 (E.D.Cal. Jan. 10, 2011)("the amount of damages awarded should be in an amount that is adequate to deter these Defendants *and others* from committing similar acts in the future."). In *Brazilian Paradise, LLC*, the court held:

> The court, recognizing the need to deter this unlawful activity, agrees with the Plaintiff that the award of modest damages does not satisfy the purpose of the legislation. The undersigned is in agreement with other courts that have considered this issue that a *firm judicial hand is required to stop this predatory behavior, which is outright thievery*, and to compensate the aggrieved appropriately.

*Id.,* 789 F.Supp.2d at 676-77 (internal quotation omitted) (emphasis added) (awarding $5,000 in statutory damages and $15,000 in enhanced damages when program was shown on three televisions to between 32-36 patrons). In addition, when considering the impact that deterrence should have on an award, the Court

should also be aware that detecting piracy is difficult. *J & J Sports Productions, Inc. v. Cubides*, 2008 WL 2756401, *2 (S.D.Tex. July 15, 2008) ("[T]he difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, weigh in favor of granting maximum statutory damages.").

B.   Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II) And Enhanced Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set established a formula for calculating damages under 47 U.S.C. § 605, and this Court has considerable discretion in awarding statutory and enhanced statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) and (c)((ii); *J & J Sports Productions, Inc. v. Guzman*, 2008 WL 2682605, *4-5 (E.D.Cal. July 1, 2008). While some courts will look to the licensing fee to determine an appropriate statutory damages award, this method undervalues the *Program* and fails to compensate Plaintiff adequately. *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,* 152 F.Supp.438, 442 (S.D.N.Y. 2001) ("a damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can charge for sublicenses."); *see Joe Hand Promotions, Inc. v. Sheedy, 2011 WL 4089534,* *3 (D.S.C. July 29, 2011) (awarding five times the licensing fee as statutory damages). Similarly, "[m]erely

requiring [defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D.Tex. 2002).

As applied herein, on April 11, 2012, investigator Matt Brown observed the unlawful exhibition of the *Program* at Copan Sula. *Declaration of Affiant.* The investigator observed the *Program* on one large, flat screen televisions (48"). *Id.* The capacity of Copan Sula was estimated to be 200, and there were between 12-14 patrons present during the broadcast of the *Program. Id.* Given the 200 person capacity, the cost to air the *Program* lawfully would have been $1,500.00. *Jacobs Decl.* ¶ 8. Plaintiff requests that this Court calculate its statutory damages award on a multiple of this amount that is sufficient both to compensate Plaintiff and account for both specific and general deterrence.  *See Joe Hand Promotions, Inc. v. Sheedy,* 2011 WL 4089534, *3 (D.S.C. July 29, 2011) (awarding five times the licensing fee as statutory damages).

In calculating damages herein, the case of *J & J Sports Productions, Inc. v. Tilakamonkul*, 2011 WL 2414550 (E.D. Cal. June 10, 2011), is instructive. In *Tilakamonkul,* the district court noted that:

> Defendant's establishment is a medium sized, dine in and take out, family restaurant, with a maximum capacity of approximately sixty patrons. . . . Plaintiff's investigator, noted that [the establishment] was

"in very good condition" and is located "within the incorporated city limits of Merced." The restaurant's dining area contains a sixty-inch projection style television set, sitting on an entertainment center in the southeast corner of the room . . . . [The investigator] conducted three head counts. Each of the three counts revealed that eight persons were present

Id. at *3. After taking these factors into account, the Court held:

In light of the foregoing, this Court will recommend that the maximum statutory damages be awarded, to wit: $10,000.00. Moreover, because Defendant's actions were willful, coupled with the fact that the establishment is in very good condition, in an incorporated part of Merced, yet the number of patrons present during the exhibition of the pirated Program was low, the Court will also recommend that enhanced damages of $20,000.00 be awarded.

Id. at *4. The facts of this case are similar to those in *Tilakamonkul*. There were 12-14 patrons in this case, as opposed to 8 patrons in *Tilakamonkul,* and there was one television in each case.

With respect to whether Defendant acted willfully and for the purpose of financial gain, there is ample case law authority to support a finding that Defendant's actions were willful and for the purpose of financial gain. In addition, the testimony of Doug Jacobs establishes the willful nature of Defendant's actions. *See Jacobs Decl.* ¶¶ 14-15, 19-23. In *Marcaida,* the court noted that it was extremely unlikely that the defendant inadvertently acquired the program because "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." 2011 WL 2149923 at *3, *quoting Time–Warner v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y.1999).

As stated in *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 2013 WL 394000, *8 (E.D.Va. Jan. 30, 2013):

> The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition. Further, the Court finds that this willful act was done for either "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The defendant restaurant is a commercial establishment, and on the night of the Exhibition hosted approximately forty patrons, who were able to enjoy the Exhibition at no cost to the defendant restaurant. Each of the restaurant's six televisions showed the Exhibition. . . . Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.

Finally, district courts have found the elements of section 47 U.S.C. § 605(e)(3)(C)(ii) satisfied by virtue of the default. *Joe Hand Promotions, Inc. v. Sorondo*, 2011 WL 4048786, *3 (E.D.Cal. Sept. 9, 2011) ("By default, Defendants admitted to willfully violating Section 605 for the purposes of commercial advantage"); *Tilakamonkul*, 2011 WL 2414550 at *4 ("By his default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage.').

C.   Substantial Penalties Are Necessary To Combat Piracy.

As noted in *J & J Sports Productions, Inc. v. Castrillon*, 2009 WL 1033364, *3 (E.D.N.Y. April 16, 2009), "Absent substantial financial penalties, the defendant will likely continue to illegally display the plaintiff's programming and

other such establishments will follow suit. . . . The plaintiff cannot practicably investigate all these infractions, nor should they be expected to do so." *Id.* (internal citation omitted). "In order to preserve the plaintiff's livelihood, the defendant must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendant and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the plaintiff." *Id.*

III.   PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION.

Damages for conversion are based on the value of the property at the time of the conversion. Cal.Civ.Code § 3336. In this case, Plaintiff requests $1,500.00 in conversion damages (the amount Defendant would have had to pay to broadcast the *Program* lawfully). *Jacobs Decl.* ¶ 8 (Exhibit 2, Rate Card). California district courts have granted conversion damages in addition to statutory damages. *J & J Sports Productions, Inc. v. Wood*, 2012 WL 33258 (N.D.Cal. Jan. 6, 2012); *J & J Sports Productions, Inc. v. Paolilli,* 2011 WL 6211905, *4 (E.D.Cal., Dec. 14, 2011) (awarding $6,200 in conversion damages in addition to $10,000 in statutory damages and $30,000 in enhanced damages).

IV.   PLAINTIFF IS ENTITLED TO COSTS AND REASONABLE ATTORNEYS' FEES.

47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the Court, "*shall direct* the

recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Plaintiff requests that it be granted 14 days from the entry of judgment to submit its Motion for costs and attorneys' fees.

## <u>CONCLUSION</u>

Based on the foregoing, default judgment against Defendants and in favor of Plaintiff is proper and should be entered with respect to Plaintiff's claims under 47 U.S.C. § 605 and Plaintiff's claim for conversion. Plaintiff respectfully requests that this Court use its statutory discretion to award Plaintiff damages that are sufficient both to compensate Plaintiff and to act as both a specific and general deterrent against future piracy.

Dated:  May 5, 2014          /s/ *Thomas P. Riley*
                             **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                             By:  Thomas P. Riley
                             Attorneys for Plaintiff
                             Innovative Sports Management, Inc.

## PROOF OF SERVICE

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On May 5, 2014, I caused to serve the following document entitled:

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED APPLICATION FOR DEFAULT JUDGMENT BY THE COURT

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was addressed to:

Joanne Pamela Zaldivar (Defendant)
6030 Santa Fe Avenue
Huntington Park, CA 90255

The fully sealed envelope with pre-paid postage was thereafter placed in our law firm's outbound mail receptacle in order that this particular piece of mail could be taken to the United States Post Office in South Pasadena, California later this day by myself (or by another administrative assistant duly employed by our law firm).

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on May 5, 2014, at South Pasadena, California.

Dated:  May 5, 2014                          /s/ *Maria Baird*
                                             MARIA BAIRD